SLUSHNIK ET AL. *v.* WALERKO.

[No. 15,599. Filed March 10, 1938. Rehearing denied April 19, 1938.]

*Oscar Jay, Ruskin B. Phillips* and *D. Russell Bontrager,* for appellants.

*Arthur H. Conley,* for appellee.

KIME, J.—This was an action to set aside a mortgage release that had been procured by fraud and to have the reinstated mortgage foreclosed. The complaint was in two paragraphs, the first of which alleged that the appellants executed to appellee their promissory note in the sum of $650.00 payable three years after July 21, 1930, and as security therefor executed a mortgage on certain realty; that the note was lost; that the mortgage was duly recorded shortly after its execution; that the appellants secured the release of the mortgage fraudulently while appellee was intoxicated; that appellants caused the fraudulently procured release to be recorded and asked that the release be declared void and this mortgage to be in full force and effect, and the second was for foreclosure of the mortgage. The appellants answered in two paragraphs, the first a general denial and the second pleading payment. To this second paragraph of answer the appellee replied in general denial.

The cause was tried to the court, who found for the appellee that the release was obtained by fraud; that the release should be expunged from the record; that there was due $497.00; that the mortgage should be foreclosed and entered judgment accordingly.

Following the overruling of a motion for a new trial, on the grounds that the decision was not sustained by sufficient evidence and was contrary to law, this appeal

was prosecuted, the error assigned being the overruling of that motion.

The evidence most favorable to the appellee discloses that the note and mortgage were duly executed; that appellants had made certain payments; that the entire amount had not been paid; that the appellants received the release from the appellee when he was intoxicated by fraudulent means; that appellee was illiterate; that the notary acknowledging the release did not read it to him or inform him as to its contents; that certain receipts, which appellants claimed showed payment, had been tampered with and changed after appellee signed them; that the note in question was lost and that the appellants had made certain payments on the note which were in the main evidenced by receipts. It appeared very definitely that there was sufficient evidence from which the trial court could have concluded that one of these receipts had been raised from $22.00 to $50.00. Some of the other receipts were written by several different parties and altogether presented a most unsatisfactory display.

It further appears that the appellee was separated from his wife; that he had been for many days intoxicated and that a portion of this time was spent in the home of the appellants, who furnished him with intoxicating liquor; that on the morning of the day that the release herein was signed the appellant Rose Slushnik inquired of the notary public, who acknowledged the release, whether or not it was possible to have the appellee sign such release in the absence of the notary and was told that this was impossible, whereupon she went after and started to the notary's office with the appellee; that before arriving there the appellee had had sufficient liquor in company with Mrs. Slushnik to cause him to become intoxicated and while in such condition he signed the release thinking it to be a receipt for the

amount of interest that he had received, he having been told by the appellant Rose Slushnik that the receipts given formerly in pencil were of no value, and that she wanted a receipt in ink.

The evidence also discloses that appellee could not read English nor could he write it beyond his signature and it is apparent from his testimony that he was, to say the least, illiterate. From this evidence it is clear that there was sufficient from which the trial court could have at least drawn the inference that the appellants had fraudulently secured the appellee's signature to the release.

The appellants contend that there is no evidence that the note in question was lost or that the appellee had made sufficient search to locate it. There is evidence from which the trial court was warranted in believing that the note was actually lost as it was testified to that the appellee and his estranged wife had "searched every place" and "looked every place."

The appellants also contend that there were no intangible stamps placed on this note and that is the reason that the appellee preferred to sue upon it as a lost note. The presumption is that this note was legal until that presumption is challenged by the pleadings or overthrown by the facts. *McCarthy* v. *Miller* (1938), 213 Ind. 596, 12 N. E. (2d) 348. The appellants here do not challenge the legality of the note by any pleading and there is evidence from which the trial court was warranted in concluding, as he may have, that the intangible tax had been paid.

Finding no reversible error, the judgment of the Elkhart Superior Court is in all things affirmed as of the term of submission, it having been suggested that the death of appellee occurred after submission.